UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 16-4408(DSD/DTS)

Frank Spanish,

            Plaintiff,

v.                                                          **ORDER**

Dental Health Products, Inc.

            Defendant.


        Brian J. Kluk, Esq. and McCollum, Crowley, Moschet, Miller &
        Laak, LDT, 700 Wells Fargo Plaza, 7900 Xerxes Avenue South,
        Suite 700, Bloomington, MN 55431, counsel for plaintiff.

        Courtney M. Blanchard, Esq. and Nilan Johnson Lewis, PA, 120
        South 6th Street, Suite 400, Minneapolis, MN 55402, counsel
        for defendant.


        This matter is before the court upon the motion for summary

judgment by defendant Dental Health Products, Inc. (DHPI).  Based

on a review of the file, record, and proceedings herein, the court

grants the motion.



                              **BACKGROUND**

        This employment dispute arises out of plaintiffFrank Spanish's

claim that DHPI owes him $100,000 in deferred salary.  DHPI is a

Wisconsin-based national distributor of dental healthcare equipment

and merchandise.  N. Roberts Decl. ¶¶ 2, 4.  In 2010, DHPI's

national field sales manager, Scott Giese, recruited Kelly Krinkie

to join DHPI's Minnesota branch office.  Giese Dep. at 17:19-23,

21:15-23.   At the time, Krinkie was a salesperson with Henry Schein, Inc., a DHPI competitor.   She worked closely with her father, Spanish, who was known to be a "heavy hitter" in the industry.   Id. at 22:20-23:8.   Krinkie told Giese that Spanish wanted to transfer his accounts to Krinkie on his retirement, which was not possible at Schein.   Id. at 23:16-25:21-25; Spanish Dep. at 28:1-20.   Giese then contacted Spanish to discuss a possible transition for both Krinkie and Spanish from Schein to DHPI.   Giese Dep. at 24:5-8.

After numerous discussions, on September 7, 2010, DHPI offered Spanish a job as a Minnesota outside account manager.   Blanchard Aff. Ex. 7.   DHPI offered Spanish $250,000 in salary for the first three years of employment plus commissions exceeding the salary amount.   Id.   Thereafter, as of September 27, 2013, Spanish would receive full commission with no salary.   Id.   The offer letter also established performance benchmarks which, if unmet, could result in a salary reduction.   Id.   For example, at month six Spanish's and Krinkie's combined sales were expected to be "pacing $250,000 per month."   Id.   The offer letter further states that the parties' employment relationship is at-will.   Id.   Spanish agreed to the terms and signed the letter on September 27, 2010.[1]   Id. at 2.

_____

[1]    Spanish also signed a non-compete agreement and a confidentiality agreement, neither of which is at issue. See Kluk Aff. Exs. 7, 8.   Krinkie also accepted employment with DHPI, but the terms of her employment are not at issue in this case.

For various reasons, by June 2011, Spanish and Krinkie were not on track to meet the sales thresholds set forth in the offer letter. Kluk Aff. Ex. 10, at 2. Giese acknowledged, however, that they were doing an excellent job and that he believed they would be able to meet expectations in the future. Id. at 2. He did not recommend a downward adjustment in salary. Id.

On December 11, 2012, Giese requested that human resources draft an addendum to the offer letter "deferring $100,000 of salary/compensation from 2013 to 2014." Blanchard Aff. Ex. 9. With this change, Spanish would receive a $150,000 salary in 2013 and a $100,000 salary in 2014.[2] See id.

According to Spanish, this request followed a conversation he had with DHPI owner, Jim Roberts, in the fall of 2011 in which Roberts asked him to defer a portion of his salary to allow the Minnesota branch office to grow. Spanish Dep. at 21:13-24:1. Roberts did not specifically say how Spanish's deferred salary would benefit the Minnesota branch, nor were specific terms of the deferral discussed. Id. Spanish initially rejected Roberts' request, but changed his mind at the end of 2012. Id. at 22:19-20.

The resulting agreement between the parties, dated December 12, 2012, states that the parties have agreed to "modify the salary portion of [Spanish's] compensation structure" as follows:

---

[2] Under the terms of the original offer letter, Spanish would receive no salary, and only commissions, beginning in 2014. Blanchard Aff. Ex. 7.

- For the 2013 calendar year Frank will be paid a bi-weekly base salary of $5,749.33 ($150,000.00 annualized)

- For the 2014 calendar year Frank will be paid a bi-weekly base salary of $3,832.89 ($100,000.00 annualized)

Blanchard Aff. Ex. 15.  It also states that "[t]his offer will supersede all other compensation agreements made prior to this date."  Id.  Vice president James Roberts, Giese, and Spanish signed the salary modification on December 14, 2012.  Id.

According to Spanish, he also had an oral "sidebar" agreement with DHPI that he could request his deferred salary "at any time." Spanish Dep. at 12:25-13:25; 56:5-17.  He explained that the December 12 written agreement only stated that he would receive the deferred salary in 2014 as "a way of keeping tabs on it."  Id. at 56:5-17.

The parties again modified Spanish's salary in October 2013. Blanchard Aff. Ex. 16.  Under the new agreement, Spanish agreed to receive a "bi-weekly base salary of $3,411.27" ($89,000 annualized) plus full commission on merchandise sales beginning on September 30, 2013.  Id.  The parties agreed to review the "compensation structure" in June 2014.  Id. As with the prior modification, the agreement states that "[t]his offer will supersede all other compensation agreements made prior to this date."  Id.  This modification is silent as to any salary deferral.

4

In late October 2014, the parties agreed to keep the existing modification in place pending further review in January 2015. Blanchard Aff. Ex. 17.  Again, the document does not reference a salary deferral.

Throughout his tenure at DHPI, Spanish struggled to reach sales goals, though the reasons for this are unclear and ultimately irrelevant.[3]  On February 18, 2015, purportedly to avoid Spanish's resignation, DHPI offered to again modify his salary as follows: (1) he would maintain the bi-weekly base salary of $3,411.27 plus full commission on merchandise sales until two months after DHPI's web store was up and running; and (2) DHPI would provide him with a "pay out" of $100,000 in two equal payments – the first in February 2015 and the second in February 2016.  Blanchard Aff. Ex. 11.  Spanish declined the modification and, on April 22, 2015, submitted his resignation and requested payment of $100,000 that he "deferred from [his] initial 3 year contract to help the MN. Branch move forward."[4]  Kluk Aff. Ex. 17.  He also requested the return of personal dental equipment he stored at DHPI's Minnesota branch office, but he spoke with a telemarketer who lacked authority to

---

[3]    The problems Spanish experienced are only tangentially related to this motion and will not be discussed in detail.

[4]    Spanish resigned so he could accept a job with Schein, where he still works.  Spanish Dep. at 6-7.

return the equipment.[5]  Spanish Dep. at 96:4-14.  He did not pursue retrieving the equipment right away, however, and only followed up six months later.  Id.  He was ultimately told that DHPI had disposed of the equipment.  Kluk Aff. Ex. 19.

On December 6, 2016, Spanish commenced this suit against DHPI in Scott County alleging breach of contract, unjust enrichment, promissory estoppel, negligent misrepresentation, violation of Minn. Stat. § 181.14, and conversion.[6]  DHPI timely removed and now moves for summary judgment.


## DISCUSSION

### I.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  Id.

---

[5]    Spanish owned equipment that he would loan to dentists with equipment out for repair.  Spanish Dep. at 94:15-19.

[6]    Spanish  has  withdrawn  his  claim  for  negligent misrepresentation.  Pl.'s Opp'n Mem. at 33.

at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest on mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

## II.  Breach of Contract

Spanish argues that he has a valid and enforceable oral "sidebar" agreement under which he could demand $100,000 in deferred salary at any time. DHPI responds that evidence of the alleged oral contract is barred by the parol evidence rule. The court agrees with DHPI.

The parol evidence rule prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements to vary, contradict, or alter the meaning of a contract when the parties have reduced their agreement to an unambiguous, integrated writing. Alpha Real Estate Co. v. Delta Dental Plan, 664 N.W.2d 303, 312

(Minn. 2003). "[W]here a written agreement is ambiguous or incomplete, however, evidence of prior or contemporaneous oral agreements tending to establish the intent of the parties is admissible." Id. (quoting Gutierrez v. Red River Distrib., Inc., 523 N.W.2d 907, 908 (Minn. 1994)). Here, the December 12, 2012, agreement unambiguously provides that Spanish would receive $150,000 in salary in 2013, and $100,000 in salary in 2014, without any reference to additional terms. Blanchard Aff. Ex. 15. Further, the agreement contains an express integration clause: "This offer will supersede all other compensation agreements made prior to this date." Id. Because the alleged oral "sidebar" agreement preceded the December 12 agreement, Compl. ¶¶ 21-24, Pl.'s Opp'n Mem. at 9, it was necessarily subsumed within that written agreement. Spanish's argument that the written agreement, although a "consequence" of the alleged oral contract, is not the "written expression" of the oral agreement is semantically nonsensical and, in any event, contrary to the facts.[7] The December 12 agreement reflects the parties' agreement with respect to Spanish's salary in 2013 and 2014, and any alleged side agreement to the contrary is inadmissible. See Norwest Bank Minn., N.A. v. Midwestern Mach. Co., 481 N.W.2d 875, 881 (Minn. Ct. App. 1992) ("Where a written agreement is integrated, no prior oral

---

[7] Spanish's argument that the December 12 agreement is merely a ministerial change-of-salary form is belied by the document itself. See Blanchard Aff. Ex. 15.

agreement relating to that agreement may vary its terms."), overruled on other grounds by Figgins v. Wilcox, 879 N.W.2d 653, 658-59 (Minn. 2016); Apple Valley Red-E-Mix, Inc. v. Mill-Winfield Eng'g Sales, Inc., 436 N.W.2d 121, 123 (Minn. Ct. App. 1989) (citation omitted) ("Pursuant to general contract law, the terms of a final and integrated written expression may not be contradicted by parol evidence of previous 'understandings and negotiations... for the purpose of varying or contradicting the writing."').

Because the parol evidence rule applies to the contract, the evidence proffered by Spanish to support his claim for breach of an oral agreement is barred. As a result, summary judgment is warranted on the breach-of-contract claim.

**III. Unjust Enrichment**

Spanish's unjust enrichment claim, pleaded in the alternative to the breach-of-contract claim, likewise lacks merit. Spanish argues that he is entitled to $100,000 because he discounted his salary to benefit DHPI without adequate compensation. "Unjust enrichment is an equitable doctrine that allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable." Caldas v. Affordable Granite & Stone, Inc., 820 N.W.2d 826, 838 (Minn. 2012). The doctrine "does not apply when there is an enforceable contract that is applicable." Id.

As already explained, the December 12 agreement explicitly addresses the issue at the center of the unjust enrichment claim, meaning that Spanish's allegations of unjust enrichment concern contractual, rather than extra-contractual, matters.  As a result, summary judgment on the unjust enrichment is warranted.[8]

## IV.  Promissory Estoppel

Spanish argues that DHPI made numerous promises to him before he agreed to employment that were never fulfilled.  Specifically, he claims that DHPI (through Giese) promised that it would do the following to maximize Spanish's ability to achieve sales volumes similar to his sales at Schein:  (1) obtain new product and merchandise lines for sale within six months; (2) hire a team of telemarketers to generate sales leads; (3) open a brick-and-mortar location to house a showroom, offices, and storage space within six months; and (4) upgrade its online web store within one year.  Pl.'s Opp'n Mem. at 5.

"Promissory estoppel is an equitable doctrine that implies a contract in law when none exists in fact."  Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000) (citation and internal quotation marks omitted).  To state a claim under promissory estoppel, a plaintiff must prove that "(1) a clear and definite promise was made, (2) the promisor intended to induce reliance and

---

[8]   The fact that the December 12 agreement was later superseded by other modifications to Spanish's salary does not affect the court's analysis.

the promisee in fact relied to his or her detriment, and (3) the promise must be enforced to prevent injustice." Id.  Spanish has failed to meet this standard.

Although it appears that Spanish and Giese generally discussed DHPI's sales plan, neither recalls establishing a firm promise to follow through on each item discussed in any particular time frame. See Spanish Dep. at 37:12-39:22; Giese Dep. at 36:8-39:10.  Under these circumstances, the record does not establish that DHPI made any clear and definite promises with respect to any of the above topics.  Further, Spanish has not and cannot establish that he relied to his detriment on rather vague and indefinite statements of intention with respect to DHPI's future sales efforts.  As a result, the promissory estoppel claim fails as a matter of law.

**V.   Unpaid Wages**

Spanish asserts a claim under Minn. Stat. § 181.13, which requires employers to pay wages promptly on termination.  "Section 181.13 only applies if an employer owes an employee unpaid wages or commissions under the employment contract." Karlen v. Jones Lang LaSalle Americas, Inc., 766 F.3d 863, 867 (8th Cir. 2014).  As discussed, Spanish has failed to establish any claim of unpaid wages or commissions.  As a result, summary judgment is warranted on this claim.

11

## VI. Conversion

Spanish lastly argues that DHPI unlawfully converted his dental equipment that he stored at the Minnesota branch office.

The common law tort of conversion is defined in Minnesota as "an act of willful interference with personal property, 'done without lawful justification by which any person entitled thereto is deprived of use and possession.'" DLH, Inc. v. Russ, 566 N.W.2d 60, 71 (Minn. 1997) (quoting Larson v. Archer-Daniels Midland Co., 32 N.W.2d 649, 650 (1948)). "The tort of conversion applies where interference with the plaintiff's property is so serious as to justify the forced judicial sale of the property to the defendant." Bloom v. Hennepin Cty., 783 F. Supp. 418, 441 (D. Minn. 1992). "Mere nonfeasance or negligence ... is not sufficient for conversion." Christensen v. Milbank Ins. Co., 658 N.W.2d 580, 586 (Minn. 2003). To adequately plead a conversion claim, Spanish must establish that he holds a valid interest in the dental equipment and that DHPI has knowingly deprived him of that interest. Williamson v. Prasciunas, 661 N.W.2d 645, 649 (Minn. Ct. App. 2003).

There is no dispute that DHPI disposed of the dental equipment at issue. Spanish has failed to establish, however, that DHPI did so knowing that it was Spanish's equipment or, even assuming such knowledge, knowing that Spanish wanted the equipment returned to him. See Kluk Aff. Ex. 19, at 1. Indeed, Spanish admits that he

12

waited six months to formally request the equipment's return, Spanish Dep. at 96:4-14, which supports DHPI's position that the equipment was effectively abandoned.  There is no genuine issue of material fact regarding DHPI's knowledge and, as a result, the court grants summary judgment on this claim as well.


**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 40] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: March 1, 2018


s/David S. Doty
David S. Doty, Judge
United States District Court